UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WESTBANK RIVERBOAT SERVICES, INC.** | **CIVIL ACTION NO. 14-cv-1025** |
| **VERSUS** | **SECTION "C"** |
| **IMPALA WAREHOUSING US, LLC** | **HON. HELEN BERRIGAN** |

**ORDER AND REASONS**

Before the Court is a Motion for Partial Summary Judgment by defendant, Impala Warehousing (US), LLC ("Impala"). Rec. Doc. 38. Plaintiff, Westbank Riverboat Services, Inc. ("WRSI") opposes the motion. Rec. Doc. 45. The motion is before the Court on the briefs and without oral argument. Having considered the law, the record, and the arguments of counsel, the Court GRANTS IN PART and DENIES IN PART the Motion, for the reasons discussed herein.

**I.   Background**

This action arises from a contract dispute between WRSI and Impala. The parties agree that in 2011, Impala purchased the Burnside Terminal, a facility along the Lower Mississippi River for loading and unloading commodities such as bauxite from ships. Rec. Doc. 38-2 at 2. *See also*, Rec. Docs. 38-1 at 1-2; 45 at 2-3. At the time of the purchase, the previous owner, Ormet Corporation, had in place an arrangement to receive

1

bauxite at the terminal for use at Ormet's processing plant. Rec. Doc. 38-3. Impala agreed to arrange to receive the bauxite on Ormet's behalf. Rec. Doc. 38-1 at 2; Rec. Doc. 45 at 3. After the purchase of the terminal, Impala engaged WRSI to assist it in arranging logistics for unloading the bauxite from the vessels to the terminal and to perform the stevedoring services, which included loading and unloading the bauxite from the vessels. Rec. Doc. 38-1 at 2; Rec. Doc. 45 at 4-5.

The parties dispute the terms of the agreement governing their relationship. On December 8, 2011, after several rounds of negotiations and edits, WRSI and Impala entered into the Midstream Stevedoring Services Agreement ("MSA"). Rec. Doc. 38-1 at 3; Rec. Doc. 38-5; Rec. Doc. 1-1 at 2. However, WRSI challenges the accuracy of the MSA that has been placed on the record in this case. Impala claims that it was never provided with a final copy of the MSA that it executed. Rec. Doc. 45 at 8. Impala also alleges that after execution of the MSA, Impala and/or Randy Comeaux altered the provisions of the MSA without WRSI's knowledge. Rec. Doc. 1-1 at 3.

Impala now moves for the Court to grant partial summary judgment on the issue of whether Impala should have paid "dockage fees" to WRSI under the terms of their agreement. The parties agree that ship owners are charged a dockage fee by the terminal for docking the ship alongside the facility., and that the dockage fee is tantamount to a "parking fee" for a ship. Rec. Doc. 38-1 at 3; Rec. Doc. 45 at 8-9. However, the parties dispute which of them is entitled to retain the dockage fees during the time that Impala engaged WRSI under the MSA. Impala maintains that dockage fees belong to the owner of the terminal and that no provision of the MSA, which it claims constitutes the entirety

of the agreement between the parties, provides otherwise. Rec. Doc. 38-1 at 3-4. WRSI contends that it was to be paid dockage fees. Rec. Doc. 45 at 9.

In total, WRSI provided stevedoring services for Impala for seventeen bauxite-laden vessels. Rec. Doc. 38-1 at 4; Rec. Doc. 45 at 12. The term of the MSA expired on December 21, 2012, and Impala elected not to extend the agreement. Rec. Doc. 38-1 at 5.

WRSI filed suit against Impala in the Orleans Parish Civil District Court on March 26, 2014. Rec. Doc. 1-1. WRSI claims that Impala withheld payment for work completed under the MSA. *Id*. at 3. WRSI claims that Impala owes it payment for sixteen invoices, each of which includes as a line item the dockage fees at issue in this motion. Rec. Doc. 38-12. The action was removed to this Court on May 5, 2014. Rec. Doc. 1.

## II.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it would affect the outcome of the suit under the applicable law. *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986)). Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). In such a case the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see also Access*

*Mediquip L.L.C. v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed.R.Civ.P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252. The moving party's burden is therefore "understandably heavier" where that party is the plaintiff. *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437, 447 (E.D. La. 2011).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted). Though the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 254.

   a. *Breach of Contract*

As a federal court considering a claim brought under 28 U.S.C. §1332, the Court must apply state law, looking to the "final decisions of the state's highest court" or, in the absence of a final decision, to determine "how the highest court of the state would resolve

the issue." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (internal citations omitted). Paragraph 11 of the MSA confirms the applicability of Louisiana State Law. Rec. Doc. 20-2 at 10. Louisiana law provides that "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Art. 2046. Moreover, "only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Amoco Prod. Co. v. Texas Meridian Res. Exploration Inc.*, 180 F.3d 664, 669 (5th Cir. 1999).

### III.   Law and Analysis

*a.   MSA*

Impala insists that the MSA, which it claims was executed by both parties on or about December 11, 2011, constitutes the entire agreement between the parties. Impala argues that the MSA does not allow for oral modification, and that the MSA does not provide that WRSI is entitled to dockage fees. Rec. Doc. 38-1 at 10. WRSI contends that the MSA entered into the record is not the final version signed by the two parties, but rather a version that was subsequently altered by Impala. Rec. Doc. 45 at 15. In support, WRSI points to emails after December 8, 2011 that suggest that the MSA was not actually signed on or about December 8. For example, on December 8, Randy Comeaux of Impala informed Robert Heitmeier of WRSI: "I sent the contract back to legal to make the corrections I mentioned to you this morning. I should have it back pretty soon then I'll forward it over to you." Rec. Doc. 49-2 at 76. On December 13, Comeaux again

5

emailed Heitmeier, asking if he had time to review the MSA and stating: "I'll be in Stanford on Monday and could possibly get it signed then if your [sic] good with it." *Id*. at 81. On the same day, Brian Carnohan of Impala also emailed Heitmeier asking if he had signed the contract yet. *Id*. at 89. Finally, on December 22, Carnohan forwarded additional contract stipulations for the MSA to Heitmeier and asked for WRSI's agreement on the new terms. *Id*. at 92. These emails suggest that WRSI did not sign the MSA on December 11 and that negotiations over the terms of the MSA continued until at least December 22. Furthermore, WRSI points to discrepancies in the MSA itself that suggest the December 8, 2011 version may not have been the final version executed, including the lack of a date on the first page and references to conflicting dates throughout the MSA, that seem to indicate that the pages may have been pulled from different drafts of the MSA. *Id*. at 95-108. Based on this evidence, the Court finds that there is an issue of fact which the Court may not resolve at this stage regarding the authenticity of the MSA that Impala relies upon in the instant motion.

    WRSI also offers deposition testimony from Mike Thibodaux, whom WRSI hired to assist with its stevedoring services and who drafted the initial proposal for the MSA. Rec. Doc. 49-1 at 64-65. Thibodaux states in his deposition that the MSA offered by Impala does not match the version that he initially drafted. *Id*. at 79-80. However, the Court does not find Thibodaux's testimony on this issue to have a bearing on the completeness and reliability of the MSA, as he himself admits that he was involved only in the initial drafting and not in the later negotiations between WRSI and Impala when the MSA was being finalized.

Nevertheless, the Court finds that it cannot yet determine whether the MSA that has been entered into the record in fact represents the final, executed agreement between the parties. Thus, the Court must DENY summary judgment based on Impala's argument that the MSA does not allow WRSI to retain dockage fees and that it represents the entire agreement between the parties.

b. *Accord and Satisfaction*

Impala argues in the alternative that WRSI is estopped from bringing a claim for dockage fees pursuant to the doctrine of accord and satisfaction. Rec. Doc. 38-1 at 15. Accord and satisfaction is an affirmative defense on a claim for money owed that requires the debtor to prove that there is "a disputed claim, a tender by the debtor for less than the amount claimed, and acceptance of the tender by negotiation of the check." *Creative Marketing Sales, Inc. v. Rayborn*, 615 So.2d 1107, 1108 (La.App. 5 Cir. 1993). A debtor "must offer payment to a creditor in full satisfaction of a disputed claim, and the creditor must in turn accept the offer." *Id*.

Impala claims that it tendered a payment of $543,329.90 to WRSI to satisfy all of its obligations under the MSA between WRSI and Impala, and that WRSI accepted the payment. Rec. Doc. 38-1. However, Heitmeier's deposition, which Impala cites to as evidence, actually indicates that the tendered payment may have been for the limited purpose of settling a discrepancy in the calculation of payments based on tonnage, rather than a settlement of all amounts owed under the MSA. Heitmeier describes the email in question, stating: "It was basically saying that they was [sic] *not going to pay the*

7

*difference in the short tonnage* and this was it. It was over." Rec. Doc. 38-3 at 22 (emphasis added).

Moreover, WRSI points out that this line of questioning was in reference to Comeaux's email sent on July 5, 2012, and forwarded on February 21, 2013. Rec. Doc. 45 at 26-27. The email that WRSI points to does indeed refer to a difference in tonnage, rather than settlement of all disputed amounts under the MSA agreement. Rec. Doc. 49 at 67-68. Indeed, a letter attached to the email clearly refers to a specific invoice, numbered 24-2013, rather than to all claims under the MSA. *Id*. While the letter closes with the more sweeping language that the amount "satisfies all of Impala's payment obligations under the terms of the agreement between WRSI and Impala," the disputed claim at the time of Impala's tender was limited to the single invoice. *Id*. Thus, the Court finds that accord and satisfaction has only been shown as to any claims, including dockage fees, that arose under invoice 24-2013. Thus, the Court finds that summary judgment is warranted only as to any amounts claimed under invoice 24-2013, and no others.

  c. *Ratification*

Finally, Impala argues that WRSI is estopped from bringing a claim for dockage fees because its behavior ratified Impala's entitlement to the fees. Rec. Doc. 38-1 at 17. Impala cites to no Louisiana case law or statute to support its proposition, instead quoting a treatise excerpt that discusses contracts induced by fraud. *Id*. at 17. According to Impala, "One who enters a contract induced by fraud, and who after obtaining knowledge of the fraud accepts the contract benefits, waives the right of rescission" and "when the benefits of a contract are retained with a knowledge of the fraud, the defrauded party

waives a right to damages for the fraud. . ." *Id*. (quoting George Blum, *et al*, 37 Am. Jur. 2d Fraud and Deceit § 322 (2d ed. 2015)). Impala asserts that by returning the dockage fee for the M/V OCEAN TOMO on February 23, 2012, failing to make any subsequent demands for dockage fees upon Impala until January 2014, and continuing to accept payment from Impala for the remainder of the term of the MSA, WRSI tacitly ratified that Impala was entitled to retain dockage fees. *Id*. at 16-17. WRSI has not responded to this argument by Impala. Rec. Doc. 45.

Under Louisiana law, the argument referenced by Impala is best represented by the defense of estoppel.[1] Under Louisiana law, estoppel is:

> the effect of the voluntary conduct of a party whereby he or she is barred from asserting rights against another party who justifiably relied on such conduct and who has changed its position to its detriment as a result of such reliance. The three elements of estoppel are: (1) representation by conduct or words, (2) justifiable reliance, and (3) any change in position to one's detriment because of the reliance.

*Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La. 1975). However, as Impala has not briefed the issue of estoppel and WRSI has not been given a chance to respond, the Court finds that a ruling on this issue would be premature. Thus, the Court DENIES summary judgment based on an argument of estoppel.

### IV.    Conclusion

Accordingly, the motion is GRANTED IN PART and DENIED IN PART. WRSI's claim for amounts owed under invoice 24-2013 is DISMISSED WITH PREJUDICE, for the reasons discussed above. The motion is denied in all other respects.

---

[1] The doctrine of ratification is inapposite here. Under Louisiana law, ratification "is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority." LSA-C.C. Art. 1843.

New Orleans, Louisiana this 24th day of August 2015.

_____
UNITED STATES DISTRICT JUDGE